UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF STORAGE UNIT NUMBER 1817 LOCATED AT 750 WINCHESTER RD., LEXINGTON, FAYETTE COUNTY, KENTUCKY | Case No. 5:21-MJ-5123-MAS |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Michael Trueblood, being duly sworn, do hereby depose and state:

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— storage unit number 1817 located at Storage Mart, 750 Winchester Rd, Lexington, Fayette County, KY. I incorporate by reference all of the information contained in the affidavit in support of the complaint for possession with intent to distribute fentanyl regarding Michael EATMON in 5:21-mj-5122-MAS.

2. I am a duly sworn Special Agent (SA) of the United States Drug Enforcement Administration (DEA) and have been assigned as such since 2018. In that capacity, I am authorized to apply for a warrant under Rule 41 of the Federal Rules of Criminal Procedure.

3. I am currently assigned to the Lexington Resident Office (LexRO) and have been since June of 2018. My current duty assignment includes, but is not limited to, investigating complex drug conspiracies and organizations and individuals involved in

1

the possession of and trafficking in controlled substances. Prior to my current assignment with the DEA, I was a police officer in Indiana for approximately six years. I am authorized and have the responsibility to investigate and arrest persons for violations of federal law, involving the unlawful distribution of drugs, (21 U.S.C. § 841(a)(1)), attempt and conspiracy to commit the same (21 U.S.C. § 846), money laundering; (18 U.S.C. § 1956 and 1957), and illegal possession of firearms (18 U.S.C. § 922 and 18 U.S.C. § 924(c)(1)).

4. During my tenure with DEA, I have participated in numerous investigations involving violations of federal narcotics laws. I have attended schools and have been instructed in many aspects of narcotics investigations and am familiar with the narcotic laws under Title 21 of the United States Code and federal money laundering laws promulgated under Title 18 of the United States Code. I am aware of the following information from numerous sources, including but not limited to my own personal observations and participation in this investigation. I have initiated and/or participated in surveillance, the operation and debriefing of numerous drug dealers, drug users, and informants, performed both physical and electronic surveillance, and executed search warrants. Further, I have analyzed records documenting the purchase and distribution of illegal drugs, and the concealment of illegal narcotics profits.

5. Based upon my training and experience, I know:

    a. That it is common for drug traffickers to maintain multiple premises from which their illegal business is conducted. Drug traffickers also store narcotics, narcotics proceeds, and records relating to the trafficking of narcotics at their residences and/or businesses and the residences and/or businesses of their relatives and coconspirators;

b. That it is common for drug traffickers to rent and maintain commercial storage units for the purpose of storing controlled substances/narcotics, proceeds from the sale of narcotics, items used in the manufacture or distribution of controlled substances, firearms obtained from the distribution of controlled substances or used to facilitate drug crimes. I also know that drug traffickers commonly use third parties to lease and/or pay the fees for the storage unit in order to avoid detection by law enforcement.

c. That large scale narcotics traffickers must maintain on hand large amounts of U.S. currency in order to maintain and finance their on-going narcotics business;

d. That drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, passports, ATM receipts, travel records, cellular telephone records, vehicle titles, property leases, property purchase agreements, financial transaction receipts, banking records, tax documents and other papers relating to the procurement, distribution, storage and transportation of controlled substances and other documents related to their drug trafficking and money laundering activities. These records include the telephone numbers of customers and sources, the amount of controlled substances distributed to various customers, along with running totals of debts owed by those customers. They also maintain paraphernalia utilized to cut and package controlled substances. These aforementioned items are commonly maintained in locations to which narcotic traffickers have frequent and ready access, i.e. homes, garages, outbuildings on the property, businesses, and automobiles;

e. That it is common for large scale drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences and/or businesses for ready access and to conceal them from law enforcement authorities;

f. That persons involved in large scale drug trafficking operations conceal within their residence and/or business caches of drugs, large amounts of currency, financial instruments, precious metals, jewelry, automobile titles and other items of value and/or proceeds of drug sales and evidence of financial transactions, or spending of large sums of money acquired from engaging in drug trafficking activities and that these items are also secured in safety deposit boxes;

g. That when drug traffickers amass large amounts of proceeds from the sales of drugs, the traffickers attempt to legitimize these profits. That to accomplish these goals, drug traffickers utilize domestic and foreign banks and/or financial institutions and their attended services, securities, cashier's checks,

money drafts, letters of credit, brokerage houses, real estate, "shell" corporations, and business "fronts." Records of these activities are commonly kept in the drug traffickers' residences and/or businesses, and in areas over which the drug traffickers exercise dominion and control;

    h. That drug traffickers commonly maintain addresses or telephone numbers in books or papers that reflect names, addresses and/or telephone numbers of their criminal associates in drug trafficking;

    i. That during drug transactions, traffickers take or cause to be taken photographs of themselves, their associates, their property, and their product. That these traffickers usually maintain these photographs at their residences and/or other properties that they control;

    j. That drug traffickers commonly use electronic equipment to aid them in their drug trafficking activities. This equipment includes, but is not limited to, digital display pagers, mobile telephones, speed dialers, electronic telephone books, electronic date books, computers, money counters, electronic surveillance equipment, eavesdropping equipment, police radio scanners, items that detect electronic equipment utilized by law enforcement and portable communication devices;

    k. That cellular telephones utilized by drug traffickers often contain evidence of their crimes including, but not limited to, the contact names and numbers of co-conspirators and electronic communications saved on the device;

    l. Based upon my experience in narcotics investigations, I know persons who traffic in controlled substances frequently maintain firearms to protect both the controlled substances and proceeds derived from their sale from other narcotics traffickers and law enforcement authorities.

6.     This Affidavit is submitted in support of an Application for a Search Warrant to search the below listed property and to search for and seize certain items (more fully described in Attachment B, incorporated by reference herein):

**750 Winchester Rd, Unit 1817, Lexington, KY, as shown in Attachment B,** is a storage unit located at Storage Mart. The storage unit is identified with the numbers "1817" affixed to a "Storage Mart" plaque that is attached to building 18

4

on the premises. The door to the storage unit is a roller-style garage door that is secured with a lock.

The storage unit is leased by a third party, James Stewart, whose involvement, if any, in any criminal offenses is unknown at this time. It is believed that Michael EATMON was utilizing this storage unit to facilitate his drug trafficking and/or illegal possession of firearms activities.

7. I know based on my knowledge, training, experience, and consultation with legal counsel, that it is a violation of 21 U.S.C. § 846 to possess with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance; that it is a violation of 21 U.S.C. § 846 to conspire to distribute a controlled substance; that it is a violation of 21 U.S.C. § 841(a)(1) to distribute a controlled substance; that it is a violation of 21 U.S.C. § 843(b) to use a communication device to further a drug offense; that it is a violation of 18 U.S.C. § 1956(h) to conspire to commit money laundering offenses; that it is violation of 18 U.S.C. § 922(g) for a prohibited person (convicted felon, drug user, etc.) to knowingly and intentionally possess firearms; that it is a violation of 18 U.S.C. § 922(g)(1) for a convicted felon to knowingly and intentionally possess a firearm, and that it is a violation of 18 U.S.C. § 924(c)(1) for a person to knowingly and intentionally possess a firearm in furtherance of a drug trafficking crime.

8. This affidavit is based on my personal knowledge and involvement in the investigation, and from information I have received from other persons involved in the investigation, including DEA Special Agents and Task Force Officers (TFO)s.

9. The information contained in this affidavit is not a complete account of everything known to me about this case. Rather, it contains the facts that I believe are sufficient to support a finding of probable cause to support the requested search warrants.

## PROBABLE CAUSE

10. From approximately May of 2020, EATMON was the subject of an ongoing investigation regarding his involvement in drug trafficking offenses. In December of 2020, investigators learned from a database that was previously used by investigators and known to be reliable that EATMON was possibly employed at Maddy's Cleaning Service. Investigators subsequently entered Maddy's Cleaning Service into the Kentucky Secretary of State website, which showed the registered owner of Maddy's Cleaning Service as Michael EATMON JR with a registered business address of 169 East Reynolds Rd, STE 206A, Lexington, KY, and an additional address of 2709 Chelsea Woods Court, Lexington, KY. The Chelsea Woods Court address was the same address for the registered owner of the gray Infinity QX56 with KY registration AKZ710 referenced above.

11. On January 4, 2021, investigators with the Lexington Police Department spoke with a credible and reliable confidential source (hereinafter: CS-2). CS-2 advised

6

Case: 5:21-mj-05123-MAS   Doc #: 1-1   Filed: 12/27/23   Page: 7 of 14 - Page ID#: 8

investigators that he/she had purchased narcotics from an individual known as "Mike" for an extended period of time. CS-2 provided phone number (313) 748-2655 to investigators as the telephone number he/she used to coordinate narcotics transactions with "Mike". CS-2 also advised investigators that "Mike" lived at 439 Campbell St, Lexington, KY, and he had a girlfriend that he/she knew as "Deb Cakes". CS-2 stated that "Mike" had a cleaning service named Maddy's Cleaning and "Mike" used the business to conduct narcotics transactions. CS-2 informed investigators that "Mike" had several vehicles, including a red Chevrolet Silverado, a black Maserati, a gray Infinity SUV, and a van that "Mike" used for the cleaning service. CS-2 stated that he/she had previously purchased narcotics from "Mike" in public locations, and "Mike" was driving the Infinity SUV when he met with CS-2. CS-2 stated that during a conversation with EATMON, EATMON advised CS-2 that he had obtained a storage unit to store his narcotics subsequent to the execution of a search warrant at a nearby location.

12. On January 6, 2021, investigators with the Lexington Police Department provided a jail photograph of EATMON to CS-2, and CS-2 stated that EATMON was the same person he knew as "Mike."

13. Following the positive identification of EATMON, your affiant checked a reliable law-enforcement database for EATMON's criminal history. EATMON's criminal history includes the following:

    a. Arrest for Dangerous Drugs on February 27, 2001 by the Harper Woods, MI Police Department. Disposition – Convicted on March 1, 2002. Sentence - $750 fine or 24 days incarceration.

    b. Arrested for Possession of Controlled Substances on October 21, 2008 by the Southfield, MI Police Department. Disposition – Convicted on October 29, 2008. Sentence – Unknown.

    c. Charged with Fleeing Police in a Vehicle (Felony); Trafficking Marijuana/Synthetic Equivalents (Felony); Assaulting, Resisting or Obstructing a Police Officer (Felony); and Operating a Motor Vehicle with a Suspended License (Misdemeanor) on July 29, 2010, by the Oakland County, MI Prosecuting Attorney. Disposition – Convicted on all charges. On August 5, 2014, EATMON was sentenced as follows: 16 months to 5 years' imprisonment for Fleeing Police; 16 months to 4 years' imprisonment for Trafficking Marijuana/Synthetic Equivalents; 16 months to 2 years' imprisonment for Assaulting, Resisting or Obstructing a Police Officer; and 38 days for Operating on a Suspended License.

    d. Arrested for Dangerous Drugs (Felony) by the Detroit, MI Police Department on May 17, 2013. Disposition – Convicted on June 12, 2013. Sentence – 60 days incarceration and 2 years' probation.

14. On March 20, 2021, utilizing electronic surveillance, investigators were able to determine that at 2:06 pm a subject matching EATMON's description was observed exiting 439 Campbell St and appeared to enter a nearby van with a logo, "Maddys," which I believe to be a reference to Maddy's Cleaning Service, bearing KY registration 788555, parked at the vacant lot of 441 Campbell St. At 2:08 pm, the same subject then walks from the van and enters the red Silverado bearing KY 512-WZT. Through electronic

8

surveillance the vehicle was then followed directly to the Storage Mart located at 750 Winchester Rd where it arrived at approximately 2:16 pm. The Silverado was only present for a short period of time before leaving.

15. On March 24, 2021 at approximately 2:33 pm, the investigators established surveillance in the area of 439 Campbell Street and 300 N. Martin Luther King Blvd, Marathon Food Mart. Units were able to observe a subject matching EATMON's description briefly entered the Maddy's van (KY 788555) parked in the vacant lot of 441 Campbell St. EATMON then entered the red Silverado bearing KY 512-WZT and drove directly to Marathon at 300 N. Martin Luther King Blvd. At approximately 2:39 pm a passenger car was observed entering the parking lot of the Marathon gas station. The driver of the red Silverado then made contact with the passenger car at the driver's side window. The vehicle then left the parking lot without making contact with any other patrons or entering the business. The passenger car was followed off where a traffic stop was conducted based on a traffic infraction. Through the course of the traffic stop, a quantity of suspected fentanyl or heroin was located on the operator of the vehicle. The operator was questioned and advised they had just purchased the fentanyl/heroin from a subject in the red Silverado. The operator stated the purchase was made at the Marathon gas station from a subject known as "Mikey". The operator was then able to provide a phone number for "Mikey" as (313) 748-2655 which is the same phone number for Michael Eatmon provided by other CI's.

16.     On March 24, 2021, investigators received information from a source of information (SOI) that EATMON had been selling quantities of fentanyl/heroin out of "the Maddy's cleaning van".

17.     On March 26, 2021, members of the Lexington Police Department obtained a search warrant to search EATMON's residence located at 439 Campbell St, Lexington, KY; the Chevrolet Silverado; a white work van with a "Maddy's" decal on the window; the Infinity QX56; Maddy's Cleaning Service located at 169 E Reynolds Rd, STE 206A, Lexington, KY; and Unit Number 611 at Storage Mart, located at 750 Winchester Rd, Lexington, KY.

18.     On March 26, 2021, members of the DEA and Lexington Police Department located the Chevrolet Silverado and Infinity QX56 parked at the Double Tree hotel located at 2601 Richmond Rd, Lexington, KY. At approximately 10:45 am, members of the DEA and Lexington Police Department executed the search warrants.

19.     During the search of EATMON's residence, investigators located a Glock firearm in the rear bedroom, inside a dresser drawer. As referenced in paragraph 13, EATMON has previously been convicted of a felony offense and prohibited from possessing a firearm pursuant to 18 U.S.C. § 922(g).

20.     During the search of the white van with the "Maddy's" decal that was parked at 441 Campbell St, Lexington, KY, investigators located and seized approximately 426 gross grams of suspected fentanyl that was packaged in plastic bags. Based on investigators' training and experience, the substance is believed to contain fentanyl, heroin, or a similar substance.

21. During the search of Maddy's Cleaning Service, investigators located and seized approximately 66 gross grams of suspected heroin that was located in a hidden wall safe in the office. Based on investigators' training and experience, the substance is believed to contain fentanyl, heroin, or a similar substance.

22. During the search of the Storage Unit Number 611 at Storage Mart, investigators located and seized approximately 11 firearms, three of which have been confirmed by law enforcement to be stolen.

23. At approximately 11:18 am, EATMON was taken into custody at the Double Tree hotel by members of the DEA as he was walking toward the Chevrolet Silverado and Infinity QX56. During a search of EATMON, a large amount of United States Currency was located/seized in his pocket. Additionally, EATMON was in possession of the key to the Chevrolet Silverado. During a search of the Chevrolet Silverado, a key ring was located/seized in the driver's door. One key on that key ring was later identified as belonging to the aforementioned white van with the Maddy's decal on the window. A second key on that same key ring was later identified as belonging to the lock at storage unit number 611. On March 29, 2021, investigators retrieved the key ring from the evidence room at the Lexington Division of Police and identified a third key on the same key ring that was possibly a key to storage unit number 1817. Investigators proceeded to the Storage Mart to confirm that the key would open the lock at unit 1817. The key was confirmed to unlock unit 1817, but investigators did not open the door or enter into the storage unit.

24. When EATMON was being processed incident to arrest, he provided his phone number to investigators as (313) 748-2655, which is the same phone number

provided by CS-2 and other sources as the number used to contact EATMON to purchase narcotics.

25. On March 27, 2021, investigators received information from a source of information (SOI-2) who is an employee at Storage Mart. SOI-2 advised investigators that he/she was suspicious of an additional storage unit at the facility. SOI-2 further stated he/she was aware of the search warrant that was executed on storage unit 611 on March 26, 2021. SOI-2 further advised investigators that a black male subject, who was not listed on the lease, regularly paid the bills for storage units 611 and 1817. SOI-2 stated that the male subject drove a red Chevrolet truck, an Infinity SUV, and a Maserati sedan. SOI-2 informed investigators that the male subject regularly paid for both units in cash, and the units were originally rented on or about the same day. The SOI confirmed that unit 611 was rented by Cassandra SPIKER, and further added that unit 1817 was rented by James STEWART. According to SOI-2, tenants are provided with a specific code to enter the facility. SOI-2 stated that each tenant is provided a unique gate code that is assigned to their specific unit. Additionally, SOI-2 stated that the gate code for unit 1817 has not been used since the unit was originally rented. Investigators know, however, that only one code is needed to access the entire storage facility. The gate code for unit 611 has been used several times. SOI-2 advised investigators that he/she believed that unit 1817 was utilized by the same male black subject (believed by investigators to be EATMON) that was paying for units 611 and 1817.

26. On March 29, 2021, investigators retrieved the key ring that was seized from EATMON from evidence storage at the Lexington Police Department. Investigators

proceeded to Storage Mart with the key ring and located storage unit 1817. Investigators subsequently identified a key on the key ring that unlocked the lock on unit 1817. Based on this information, I believe that EATMON was utilizing unit 1817 to facilitate his drug trafficking activities. Based on my training and experience, I know that it is common for drug traffickers to utilize multiple locations to store firearms, narcotics, monies, and additional items of contraband in an attempt to thwart law enforcement.

27. On March 29, 2021, investigators reviewed electronic location data obtained pursuant to judicially authorized tracking warrants for EATMON's Silverado and learned that EATMON's Silverado was present at 750 Winchester Rd, Lexington, KY on March 19, 2021, at approximately 1:35 pm; March 20, 2021 at approximately 2:16 pm; March 21, 2021 at approximately 7:54 pm; and March 25, 2021 at approximately 9:15 pm. Specifically, the data showed that the Silverado was stationary near building 18 at those times.

## CONCLUSION

28. Based on the above, I believe that there is probable cause that Michael EATMON utilizes storage unit number 1817 located at Storage Mart, 750 Winchester Rd, Lexington, KY, in relation to his drug trafficking offenses in violation of 21 U.S.C. § 841(A) and/or his illegal possession of firearms offenses in violation of 18 U.S.C. §922(g). I believe that contraband, the fruits of crime, or things otherwise criminally possessed, including controlled substances, drug proceeds, records, ledgers, firearms, and other items more specifically set forth in Attachment B will be found and seized upon searching the above listed address.

29. IT IS REQUESTED that the Court authorize the search of the specified location and IT IS FURTHER REQUESTED that the Court authorize the search of any safes, lockboxes, or similar containers found inside the storage unit.

The above-statement is true and correct to the best of my knowledge, information, and belief and I request that a search warrant to be issued for the above-described property.

Respectfully submitted,

**Signed remotely per FRCP 4.1.**
Michael J. Trueblood
Special Agent
DEA

Subscribed and sworn to before me this  30   day of March 2021.

Matthew A. Stinnett
U.S. Magistrate Judge